## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEVIN J. REID,

   Plaintiff,

v.            Case No. 18-12871
              Hon. Denise Page Hood

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

_____/

## OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,[#17]
## GRANTING DEFENDANT'S MOTION FOR SUMMARY
## JUDGMENT,[#19]
## AND DISMISSING ACTION

### I.  BACKGROUND

#### A. Procedural History

On September 14, 2018, Plaintiff Kevin J. Reid ("Reid") brought this action

pursuant to 42 U.S.C. § 405(g), seeking reversal of the final decision of Defendant

Commissioner of Social Security ("Defendant") denying Reid's application for

Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

Both parties filed summary judgment motions.

Reid protectively filed an application for SSI, alleging disability beginning

September 30, 2002. After Reid's initial claim was denied on August 13, 2015,

Reid filed a written request for a hearing on September 29, 2015. A hearing was held on August 21, 2017, in Flint, MI. The Administrative Law Judge ("ALJ") issued a decision denying Reid's claim on November 21, 2017.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether a claimant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," the claimant will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, a disability will not be found. § 404.1520(a)(4). Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. § 404.1520(a)(4). If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC") and will find the

claimant not disabled if he or she can still do past relevant work. § 404.1520(a)(4). At the final step, the Commissioner reviews the claimant's RFC, age, education and work experience, and determines whether the claimant could adjust to other work. § 404.1520(a)(4). The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Reid was not disabled. At the first step, he found that Reid had not engaged in substantial gainful activity since his alleged onset date of May 15, 2015. [ECF No. 15-2, Pg.ID 78] At the second step, the ALJ found that Reid had the severe impairments of osteoarthritis and post-traumatic seizure disorder. [*Id.*] Next, the ALJ determined that none of Reid's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.* at 80]

At step three, the ALJ found that Reid had the RFC to perform light work with restrictions. Light work is defined as work that:

> [i]nvolves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work,

unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R § 416.967. And with the additional limitations, Reid can "frequently climb ramps or stairs and balance . . . occasionally reach overhead, and he must avoid all exposure to hazards." [ECF No. 15-2, Pg.ID 80]

At step four, the ALJ found that Reid did not have any past relevant work. [*Id.* at 83] But after considering Reid's age, education, work experience, RFC, and the testimony of the vocational expert ("VE"), the ALJ found that Reid could perform jobs in the national economy, including as a marker, cashier, or inspector hand packager. [*Id.* at 84]

## I.    LEGAL ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited in scope to determining whether the Commissioner employed the proper legal criteria in reaching his conclusion. *Garner v. Heckler,* 745 F.2d 383 (6th Cir. 1984). The credibility findings of an administrative law judge ("ALJ") must not be discarded lightly and should be accorded great deference. *Hardaway v. Secretary of HHS*, 823 F.2d 922, 928 (6th Cir. 1987). A district court's review of an ALJ's decision is not a de novo review. The district court may

not resolve conflicts in the evidence nor decide questions of credibility. *Garner*, 745 F.2d at 397. The decision of the Commissioner must be upheld if supported by substantial evidence, even if the record might support a contrary decision or if the district court arrives at a different conclusion. *Smith v. Secretary of HHS*, 893 F.2d 106, 108 (6th Cir. 1984); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Much of Reid's Motion focuses on his allegations against his former employer, the City of Flint. Reid claims that the City conspired with his union to wrongfully terminate him once they found out he had a disability. Issues relating to the union contract and Reid's termination are not before the Court. Neither the City nor the union are parties before the Court in this social security determination case. The only issue before the Court is a review of the ALJ's social security determination.

Given that most of Reid's Complaint focuses on issues not before the Court, Reid has failed to allege detailed allegations against Defendant. Reid is now proceeding *pro se*, and the Court liberally construes Reid's Complaint. Without specific allegations against Defendant, the Court has reviewed the record using the proper standard to determine if there may be any decisions that would require remand. *But see Erwin v. Edwards*, 22 F.

App'x 579, 580 (6th Cir. 2001) ("[A] [l]iberal construction does not require a court to conjure allegations on a litigant's behalf.").

Reid argues that the ALJ failed to properly determine the severity of his conditions and consider new medical evidence. The Court finds that Reid has failed to establish that the ALJ's findings were not supported by substantial evidence.

### B. The ALJ's Findings

#### 1. Step 2 and 3 Findings

Reid was diagnosed with carpel tunnel syndrome, osteoarthritis, and post-traumatic seizure disorder. [ECF No. 15-2, Pg.ID 79] But none of these conditions qualified as a disability. Defendant argues that even if the ALJ erred at step two in not finding additional physical or mental impairments, which would qualify as severe impairments, any potential error would be harmless. To support this assertion, Defendant indicates that the ALJ proceeded with the sequential five-step process and addressed any mental or manipulative deficits. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("[E]ven if the ALJ erred at step two, the ALJ's consideration of the cumulative effect of [the plaintiff's' impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless.").

Reid argues that the ALJ's understatement of his physical ailments improperly disqualified his conditions from meeting one of the medical listings. Reid also contests the ALJ's finding that Reid's seizures do not have a significant effect on his daily life. An impairment is medically equivalent to a listing if "it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 1526(a). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Conditions that only match "some of [the] criteria" do not qualify, "no matter how severe[]." *Id.*

To show that the ALJ did not use substantial evidence to make his determination, Reid "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-33 (6th Cir. 2014). Reid's burden is high. "[S]atisfying the listings during the third step yields an automatic determination of disability based on medical findings . . . the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation*." Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). Reid does not meet this burden.

Listing 1.02 applies to the "major dysfunction of . . . joint(s) . . . [c]haracterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion . . . ." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.02. The ALJ found that Reid did not "show a gross anatomical deformity of a major peripheral joint that results in an inability to ambulate effectively or to perform fine and gross movements effectively." [ECF No. 15-2, Pg.ID 80] The ALJ also supported this finding with a report from Reid's former physician, Dr. Ahmad. Dr. Ahmad acknowledged that Reid had gait difficulties but recorded that Reid "clearly augments and exaggerates" his condition. [ECF No. 15-7, Pg.ID 480]

Listing 1.04 refers to "disorders of the spine . . . resulting in [the] compromise of a nerve root" combined with evidence of a series of other physical characteristics. This other evidence is characterized by:

> [N]euro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

> 11C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.04. Here, the ALJ found that the evidence failed to establish that Reid had "experienced the compromise of a nerve root or the spinal cord with evidence of nerve root compression, including motor loss, sensory or reflex loss." [ECF No. 15-2, Pg.ID 80]

The ALJ also concluded that Reid's seizures did not qualify for the epilepsy listing, under 11.02. Listing 11.02 explains that epilepsy listings must be "documented by a detailed description of a typical seizure and characterized by A, B, C, or D." Section B provides that Dyscognitive seizures occur "at least once a week for at least 3 months . . . *despite adherence to prescribed treatment*. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.04(B) (emphasis added). The ALJ found that Reid's seizures did not qualify for an 11.04 listing because Reid did not submit a detailed description of his typical seizures. [ECF No. 15-2, Pg.ID 80] And Reid admitted that he is not "compliant with his medication regimen." [*Id.* at 81] This evidence is especially compelling because the ALJ found that Reid tolerates the medication (i.e. no major side effects) and his seizures were in remission when he complied with his prescribed medical regimen. [*Id.* at 433]

Reid has provided no medical evidence showing that he reasonably could meet or equal every requirement of Listings 1.02, 1.04, or 11.04. *Smith-Johnson*, 579 F. App'x at 432-33. Contrarily, the records the ALJ relied upon constitute substantial evidence.

The ALJ also found that Reid did not have a "medically determinable mental impairment." [ECF No. 15-2, Pg.ID 79] The ALJ reviewed Reid's treatment notes and determined that he did not have any "noteworthy cognitive or adaptive deficits." [*Id.*] The ALJ also noted that Reid did not receive any meaningful mental health treatment beyond a psychotropic regimen administered by his physician. [ECF No. 15-2, Pg.ID 79] The ALJ also considered the state agency physician, Dr. Thomas Tsai's report, which opined that Reid's mental impairment was "nonsevere and caused no more than mild limitations." [*Id.*] Dr. Thomas also noted that there was no other medical evidence suggesting "greater mental limitations." [*Id.*]

The ALJ further supported his conclusions about Reid's mental health by noting Reid's lack of treatment for his affective disorder and Dr. Tsai's "persuasive medical opinion." [*Id.*] The Court finds that the ALJ's reliance on Dr. Tsai's—a nonexamining physician—report was appropriate because the ALJ "gave good reasons" for using his report and Dr. Tsai's notes were consistent with the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

*2. Residual Functional Capacity Determination*

Defendant argues that Reid has not demonstrated that the RFC is not supported by substantial evidence. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (finding that the plaintiff bears the burden of demonstrating the need for a more restrictive RFC).

The ALJ's RFC relied on past administrative findings and current medical opinions to conclude that Reid could perform light work with certain limitations. The ALJ noted that he adopted a previous ALJ's RFC because "the evidence [did] not show a material change in the claimant's condition during the period since the prior decision was issued." [EFC No. 15-2, Pg.ID 80] The Court finds that this was appropriate because the ALJ gave a "fresh look" as required by *Earley v. Commissioner of Social Security*. 893 F.3d 929, 931 (6th Cir. 2018).

The ALJ's new review found that Reid was still restricted to light work but noted that medical records did not show any material worsening of Reid's physical functioning since the previous decision. [ECF No. 15-2, Pg.ID 81] To support this finding, the ALJ acknowledged that Reid reported "pain, gait disturbance, and sensorimotor deficits," but also frequently "denied all other symptoms except for back pain." [*Id.*] The ALJ further opined that Reid's records were "grossly normal" and any indication of more severe limitations was "tainted" by Reid's "apparent efforts to augment or exaggerate" his symptoms. [*Id.* at 81-82]

The ALJ also used current medical records to find that Reid's seizure disorder has not significantly worsened since the last RFC determination. The ALJ discussed Reid's occasional hospital treatment but noted that one hospital visit was attributable to a non-ruptured aneurysm and not epilepsy. [*Id.* at 82] The ALJ also discussed Reid's habit of avoiding or refusing treatment after his hospital visits. [*Id.*]

### 3.  Step 5

At step 5, the ALJ found that there were a significant number of jobs available in the national economy that Reid could perform. 20 C.F.R. §§ 416.969, 416.969(a). Limiting Reid's potential vocations to light work restricted to climbing ramps or stairs, occasional overhead reaching, and avoiding exposure to hazards, the VE opined that Reid could still perform the positions of marker, cashier, or inspector hand packager. [*Id.* at 84] During the administrative hearing, the ALJ further restricted Reid's physical limitations and the VE still determined that there were a significant amount of jobs available in the national economy. Even if Reid argues that he should have further limitations, the ALJ's decision rested on substantial evidence because his hypotheticals to the VE illustrate that Reid can still find employment with heightened restrictions.

### 4.  New Evidence

Plaintiff argues that there is new evidence to support a request to remand under sentence six of 42 U.S.C. § 405(g). Plaintiff refers to his March 2019 treatment at Henry Ford Hospital as new evidence. However, the Court cannot consider the alleged evidence because Reid has not yet produced it.

Even if Reid produced such evidence, Defendant argues that the Court should consider the argument waived because Reid failed to submit the evidence in his initial brief. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009) ("It is [the plaintiff's] burden to make this showing under § 405(g) . . . ."). Citing *Foster v. Halter*, Defendant asserts that the Court could not consider new evidence when determining whether the ALJ's decision was based on substantial evidence. 279 F.3d 348, 357 (6th Cir. 2001) ("[T]his court has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review.").

Defendant also argues that Reid's submission of Dr. Barkley and Hurley Medical Center's reports to the Appeals Council should not be considered because it is not "new and material," as required by *Brainard v. Secretary of Health & Human Services*. 889 F.2d 679, 681 (6th Cir. 1989). Defendant asserts that Dr. Barkley's report, which postdates the hearing but predates the ALJ's decision, should not be considered because it is immaterial. *Wyatt v. Sec'y of HHS*, 4 F.2d 680, 685 (6th Cir. 1992) ("Where a party presents new evidence on appeal, this

court can remand for further consideration of the evidence only where the party seeking remand shows that the new evidence is material."). Evidence is only material if "there is a reasonable probability the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence. *Foster*, 279 F.3d. at 358.

Defendant claims that Dr. Barkley's report merely contains subjective notes and does not provide additional medical testing. Defendant further contends that the report simply reiterates that Reid has epilepsy. As Defendants indicate, the ALJ did not dispute this finding, and the ALJ provided legitimate reasons why Reid's epilepsy did not qualify as a disability.

Dr. Barkley's report also mentions that Reid has Post-Traumatic Distress Disorder. However, the report only recommends that Reid would "benefit from counseling for PTSD." [ECF 15-2, Pg.ID 97] Dr. Barkley does not indicate whether Reid has attended therapy, nor does he recommend a robust course of treatment. Under *Hill v. Commissioner of Social Security*, a mere diagnosis does not establish a severe impairment or functional limitations. 560 F. App'x 547, 551 (6th Cir. 2014). Dr. Barkley did opine that Reid's seizures are caused by stress. [ECF No. 15-2, Pg.ID 90] But the Court finds that the ALJ's hypothetical to the VE asking about "low stress" jobs, shows that jobs are available that would meet Reid's needs.

As for the records from Hurley Medical Center, Defendant argues that they are not new nor material. Defendant asserts that the records simply restate that Reid suffers from seizures and provide no new descriptions to satisfy Listing 11.02. Defendant also indicates that the new records do not provide a solution for Reid's noncompliance with his prescribed medical regimen. Defendant also contends that Reid has not demonstrated the "good cause" necessary to admit new records. Defendant indicates that Reid was represented by counsel both before and after the hearing, and Reid's counsel could have submitted the records during the three months before the ALJ's decision.

The Court agrees. Reid's new records are not material. Even if the ALJ considered these new records, the records would not have changed the outcome.

## I.   CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [ECF No. 17] is **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [ECF No. 19] is **GRANTED**.

IT IS FURTHER ORDERED that this action is **DISMISSED** with

prejudice.

s/Denise Page Hood
Chief Judge, United States District

DATED: May 19, 2020